## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**EDDUARD PRINCE,**

        *Plaintiff*,

    **v.**                          **Civil No.: 1:23-cv-02496-JRR**

**MARYLAND DEPARTMENT OF
TRANSPORTATION SECRETARY
PAUL WIEDEFELD,**

        *Defendant*.

## <u>MEMORANDUM OPINION</u>

*Pro Se* Plaintiff Edduard Prince brings this action against Maryland Department of Transportation Secretary Paul Wiedefeld, alleging violations of 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964 ("Title VI"), and State Government Section § 20-304 of the Maryland Code. Pending now before the court are two motions: Defendant's Motion to Dismiss Amended Complaint (ECF No. 21) and Plaintiff's Motion to Stay (ECF No. 25). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion to Dismiss (ECF No. 21) will be granted, and the Motion to Stay (ECF No. 25) will be denied as moot.

## I.    BACKGROUND[1]

On July 11, 2023, Plaintiff was riding the Baltimore Light Rail when a Maryland Transit Authority police officer announced a "fare sweep," meaning that he was checking whether passengers possessed tickets. (ECF No. 19 ¶¶ 5, 6.) The officer asked Plaintiff for his ticket, and Plaintiff refused to answer any questions without a warrant. *Id.* ¶¶ 8–9. The officer then "place[d]

---

[1] For purposes of resolving the pending motions, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 19.) *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Plaintiff under arrest," and removed him from the train. *Id.* ¶ 10. During the time he was detained, Plaintiff "was coerced into providing identification under the threat of incarceration." *Id.* ¶ 11. The officer then issued a $50 citation to Plaintiff for failure to pay his fare. *Id.* ¶ 12.

Plaintiff alleges that Defendant then had an attorney with the Maryland Office of the Attorney General attend his citation hearing "to interfere with the proceedings" and ensure he was found guilty. (ECF No. 19 ¶¶ 23–24.) On September 1, 2023, Plaintiff was found guilty for his failure to exhibit proof of payment and was fined $32.50. The Light Rail fair was $2.00. *Id.* ¶ 25. Plaintiff states that he has appealed his conviction to the Appellate Court of Maryland; Defendant notes that Plaintiff has already appealed his conviction to the Circuit Court for Baltimore City, Maryland, where he was again found guilt upon a trial *de novo.* (ECF No. 26 at p. 2–3.)

Plaintiff avers that fare sweeps are only conducted in areas with a heavy population of African American riders, that the use of fare sweeps is a "racist policy use[d] to negatively affect" African Americans, and that fare sweeps have "been deemed unconstitutional" by the Supreme Court of Maryland under *Maryland v. Carter*, 472 Md. 36 (2021). (ECF No. 19 ¶¶ 7, 14, 20.) Plaintiff further alleges that Defendant is responsible for this policy and that he is "a member of the Ku Klux Klan ("KKK")" who, in a previous employment position, "rolled out the red carpet for his fellow KKK members." *Id.* ¶¶ 15–17. Plaintiff further alleges Assistant Attorney General Laura Jenifer falsely represented herself as Plaintiff's attorney to the Clerk of Court to "derail Plaintiff's appeal process." *Id.* ¶ 26. While the court is required at this stage to accept the well-pled allegations of the Amended Complaint as true, it bears noting that Defendant asserts that these allegations are false and defamatory. (ECF No. 21-1 at p. 4 n.5.)

Plaintiff filed the present action in the Circuit Court for Baltimore City, Maryland, on July 27, 2023. (ECF No. 1 ¶ 1.) Defendant removed the action to this court on September 13, 2023,

and moved to dismiss the complaint on September 29, 2023.  (ECF Nos. 1, 15.)  On October 26, 2023, Plaintiff filed his Amended Complaint, but, due to a clerical error, it was not docketed until February 1, 2024.  (ECF Nos. 19, 20.)  In the interests of justice and because the court had not yet adjudicated the pending motion, the court allowed Plaintiff to file the Amended Complaint despite its untimeliness under Rule 15.  (ECF No. 20.)

Plaintiff asserts the following claims:

> Count I: False Imprisonment in Violation of 42 U.S.C. § 1983;
> Count II: Race Discrimination in Violation of Title VI of the Civil Rights Act of 1964;
> Count III: Malicious Prosecution in Violation of 42 U.S.C. § 1983;
> Count IV: Excessive Fees in Violation of 42 U.S.C. § 1983; and
> Count V: Discrimination in Place of Public Accommodation in violation of MD. CODE ANN., STATE GOV'T § 20-304.

(ECF No. 19.)  Plaintiff seeks monetary damages in the amount of $2,000,000 and injunctive relief in the form of "independent investigation" into: (1) "the procurement and contract process to ensure that African-American contractors get 31% of the procurement and contracts issued per year"; (2) Defendant's affiliation with the KKK; and (3) Defendant's implementation of "racist policies" during his previous employment with the Washington Metropolitan Area Transit Authority.  *Id.* ¶¶ 1, 29–31.  Defendant moves to dismiss the Amended Complaint.  (ECF No. 21.) Following Defendant's Motion to Dismiss, Plaintiff filed his Motion to Stay this case pending the outcome of his appeal before the Appellate Court of Maryland.  (ECF No. 25.)

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction."  *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject

matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge. *Id.* A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Id.* (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration.")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

Defendant raises a facial challenge to the court's subject matter jurisdiction, asserting that the doctrine of sovereign immunity bars Plaintiff's Counts I, III, IV, V brought under 42 U.S.C. § 1983 and MD. CODE ANN., STATE GOV'T § 20-304. (ECF No. 27-1 at 8–9.) The defense of sovereign immunity is a jurisdictional bar because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). "Given the unique attributes of sovereign immunity, we have held that the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)).

B. **Federal Rule of Civil Procedure 12(b)(6)**

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

Relevant here, "*pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers." *Gray v. Wash. Metro Area Transit Auth.*, No. DKC-16-1792,

2017 WL 511910, at *2 (D. Md. Feb. 8, 2017) (citing *Erickson v. Paradus*, 551 U.S. 89, 94 (2007)).

"Liberal construction means that the court will read the pleadings to state a valid claim to the extent

that it is possible to do so from the facts available; it does not mean that the court should rewrite

the complaint to include claims never presented."  *Id.* (citations omitted).

### III.   **ANALYSIS**

Defendant seeks dismissal of Plaintiff's Amended Complaint both for lack of subject

matter jurisdiction—because Counts I, III, IV, and V are barred under the doctrine of sovereign

immunity, and because Plaintiff has failed to state a claim for any of the claims asserted.  (ECF

No. 21-1.)  Plaintiff generally opposes the Motion to Dismiss, averring that the court should "lift[]"

sovereign immunity as to Defendant and that the Amended Complaint "contains sufficient factual

allegations to support each cause of action."  (ECF No. 23-1 at p. 2–3.)

### A.  **Rule 12(b)(1) – Eleventh Amendment Immunity**

Defendant first argues that Count I, III, IV, and V—Plaintiff's § 1983 claims and his

Maryland statutory claim—are barred by Eleventh Amendment sovereign immunity.  (ECF No.

21-1 at p. 7–9.)  In response, Plaintiff contends that "the Secretary" is a proper party and that there

is a need to "lift the sovereign immunity of the Secretary of Transportation, Paul Wiedefeld, in

light of allegations of racism and discriminatory practices."  (ECF No. 23-1 at p. 2.)  Plaintiff's

response appears to concede that sovereign immunity is applicable but that "exception exists" and

that "lifting sovereign immunity for [Defendant] is warranted, given the seriousness of the

allegations and the need for accountability."  *Id.* at p. 2–3.

The Eleventh Amendment provides that "the Judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S.

CONST. AMEND. XI.   Under the Eleventh Amendment, states generally enjoy immunity from suit unless a state waives its immunity, or the immunity is abrogated by Congress.  *See Bd. of Tres. v. Garrett*, 531 U.S. 356, 363–64 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.  We have recognized, however, that Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." (citations omitted)); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019) ("[S]tate sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it."). As explained *supra,* a finding that a defendant enjoys sovereign immunity on a claim presents a jurisdictional bar to the court's adjudicative power over such claim.  *Cunningham v. General Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018).

With respect to abrogation, "Congress has not abrogated sovereign immunity for § 1983 suits," and thus the remaining question is whether Defendant has waived sovereign immunity. *Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).  Regarding waiver, this court has previously explained:

> [A] State may voluntarily waive its sovereign immunity by invoking federal court jurisdiction, or by making a clear declaration that it intends to submit itself to the jurisdiction of the federal courts . . . .
>
> In the absence of specific legislative authorization, neither the Attorney General for the State of Maryland nor any assistant thereto has any authority to waive Maryland's sovereign immunity in the course of representation of the State, any State entity, or any State officer or employee. As noted by the Fourth Circuit, the Maryland legislature has not authorized counsel for the State to waive sovereign immunity. In fact, Maryland statutory law expressly provides that the Attorney General's representation does not deprive any State officer, State employee, or unit of the State government of

7

> any sovereign immunity that is available to the officer, employee, or unit.

*Gross v. Morgan State Univ.*, 308 F. Supp. 3d 861, 866–67 (D. Md. 2018) (citations omitted).

Relevant here, "[l]awsuits against state officials in their official capacities, . . . are the equivalent of suits against the state itself." *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 167 (D. Md. 2022). *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.") (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)); *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty., Virginia*, 355 F. Supp. 3d 386, 399–400 (E.D. Va. 2018) ("[B]ecause a state official sued in his official capacity stands in for the entity he represents, he is equally entitled to assert that entity's sovereign immunity from suit.").

"State sovereign immunity is not absolute." *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty., Virginia*, 355 F. Supp. 3d 386, 399–400 (E.D. Va. 2018). Pertinent to this action, "suits for 'prospective injunctive relief against state officials acting in violation of federal law' are permitted" pursuant to *Ex Parte Young*, 209 U.S. 123 (1908). *Eller*, 580 F. Supp. 3d at 168. "Under this limited exception, a federal court may issue prospective, injunctive relief against a state official to prevent ongoing violations of federal law, such as when the state officer is enforcing, or threatening to enforce, an allegedly unconstitutional state law." *Id.* "To invoke the exception, the plaintiff must identify and seek prospective equitable relief from an *ongoing* violation of federal law." *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018), *aff'd,* 589 U.S. 248 (2020) (emphasis in original).

### 1. *Section 1983 Claims*

With regard to Plaintiff's section 1983 claims, the court is persuaded by Defendant that sovereign immunity bars Plaintiff's Counts I, III, and IV.  First, a plain reading of Plaintiff's pleadings demonstrates that, while he did not so specify, Plaintiff brings this action against Defendant in his official capacity as Secretary of the Maryland Department of Transportation and not in his individual capacity; this is apparent from the manner in which Plaintiff identifies and names Defendant in his pleading ("Defendant Maryland Department of Transportation Secretary Paul Wiedefeld," ECF No. 19 at 1), the nature of the allegations, the manner of service, and the relief sought.  (ECF No. 21-1 at p. 7.)  Notably, Plaintiff seeks prospective injunctive relief from the state as a remedy.  (*Id.* ¶¶ 29–32.)  *Cf. Adams v. Ferguson*, 884 F.3d 219, 225 (4th Cir. 2018) (concluding that a defendant was sued in her individual capacity where the complaint sought damages from the individual defendant and "ma[de] no mention of relief from the state"); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543 (1986) ("The first paragraph of the complaint alleged that the action was brought against the defendants 'in their individual and official capacities.'  There is, however, nothing else in the complaint, or in the record on which the District Court's judgment was based, to support the suggestion that relief was sought against any School Board member in his or her *individual* capacity. . . . [t]he course of proceedings . . . make it abundantly clear that the action against [Mr. Youngman] was in his official capacity and only in that capacity." (citations omitted) (emphasis in original)).

Moreover, even disregarding a plain reading of Plaintiff's pleadings, Plaintiff fairly concedes this point, as Plaintiff does not assert in his response to Defendant's motion that he sought to sue Defendant in his individual capacity.  Instead, he notes that action against an official in his individual capacity is an exception to sovereign immunity, and then, instead of invoking that

exception, claims that the court should "lift[]" sovereign immunity "given the seriousness of the allegations and the need for accountability." (ECF No. 23-1 at p. 2–3.) While a *pro se* plaintiff's pleadings are afforded liberal construction, to read the Amended Complaint as Plaintiff now urges – which is to say in a manner Plaintiff has repeatedly upon argument failed to assert and which goes against the plain reading or construction of the pleading – extends inappropriately beyond liberal construction of *pro se* pleadings and calls upon the court to infer facts and arguments not alleged or made. "[A] federal court may not act as an advocate for a self-represented litigant." *Hampel v. Skillman*, No. CV SAG-22-1115, 2023 WL 113745, at *1 (D. Md. Jan. 5, 2023), *appeal dismissed sub nom. Hampel v. Maryland*, No. 23-1436, 2024 WL 399062 (4th Cir. Feb. 2, 2024) (citing *Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996) and *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)).

Here, Defendant is a state official defending an action against him in his official capacity; thus the action is the equivalent of one against the state. *See Eller*, 580 F. Supp. 3d at 167, *supra*. Congress has not abrogated the state's Eleventh Amendment immunity with respect to § 1983 claims, and the state has not waived it. *See Biggs*, 953 F.3d at 241. The court is not free to, as Plaintiff requests, simply "lift[]" the State's sovereign immunity. *See Passaro*, 935 F.3d at 247, *supra*. The only remaining question is whether, pursuant to *Ex Parte Young*, Plaintiff has identified and sought "equitable relief from an *ongoing* violation of federal law." *See Allen*, 895 F.3d at 354, *supra*. The "injunctive relief" Plaintiff seeks is not related to an alleged ongoing violation of federal law. (ECF No. 19 ¶¶ 29–32.) Accordingly, the court will grant Defendant's motion to dismiss as to Count I, III, and IV under section 1983 for lack of subject matter jurisdiction.[2]

---

[2] Because the court concludes that sovereign immunity bars the exercise of its jurisdiction as to Plaintiff's section 1983 claims, it does not reach Defendant's arguments that Plaintiff failed to state a claim as to those counts.

### 2. *Maryland Statutory Claim*

Defendant also seeks dismissal of Plaintiff's Count V, violation of State Government Section 20-304 of the Maryland Code.  With regard to Count V, the court is not persuaded that Defendant meets his burden to show that sovereign immunity deprives the court of jurisdiction. Notably, Defendant's argument on this topic is minimal, and asserts solely that the Maryland General Assembly has not waived sovereign immunity as to claims under State Government section 20-304 because under State Government section 20-903, it only waived sovereign immunity as to employment discrimination cases.  Defendant's rationale is well-taken; the Supreme Court of Maryland has recently explained:

> [W]hen the General Assembly has intended to waive the State's sovereign immunity for purposes of a State statutory claim, it generally has done so directly within the specific statutory scheme at issue. Indeed, we previously have held that when the General Assembly enacts a waiver of the State's immunity within a specific statutory scheme, the MTCA—as a gap-filler provision—does not apply.
>
> Furthermore, these statute-specific waivers usually carry with them various procedural or administrative requirements before a claimant can file suit. The General Assembly's separate waivers of sovereign immunity for specific State statutory claims makes us especially reticent to conclude that it intended the waiver in the MTCA to apply to statutory claims generally. . . .

*Williams v. Morgan State Univ.*, 484 Md. 534, 553–54 (2023) (citations omitted).  However, the court expressly declined to "decide whether the MTCA waives sovereign immunity generally for state statutory claims that sound in tort."  *Id.* at 554.

While the court agrees in principal that common law and the statutory scheme of section 20-304 tend to support the proposition that state sovereign immunity has not been waived as to Plaintiff's claim under section 20-304, at this stage, Defendant has not met his burden to show that

sovereign immunity shields him from liability.   The court, therefore, proceeds to address

Defendant's 12(b)(6) argument that Plaintiff fails to state a claim for violation of section 20-304.

**B. Rule 12(b)(6) – Failure to State a Claim**

**1. *Count V: Discrimination in a Place of Public Accommodation in Violation of State Government Section 20-304 of the Maryland Code***

Defendant contends that Plaintiff fails to state a claim for a violation of section 20-304

because no private right of action exists under the statute.  (ECF No. 21-1 at p. 16.)  In response,

Plaintiff states that "Maryland law provides avenues for redress against state officials for unlawful

conduct."  (ECF No. 23-1 at p. 2.)

State Government section 20-304 provides:

> An owner or operator of a place of public accommodation or an
> agent or employee of the owner or operator may not refuse, withhold
> from, or deny to any person any of the accommodations, advantages,
> facilities, or privileges of the place of public accommodation
> because of the person's race, sex, age, color, creed, national origin,
> marital status, sexual orientation, gender identity, or disability.

MD. CODE ANN., STATE GOV'T § 20-304.   "[A] person claiming to be aggrieved by an alleged

discriminatory act may file a complaint with the [Maryland Commission on Civil Rights]."  *Rowe

v. Maryland Comm'n on C.R.*, 483 Md. 329, 337 (2023) (citing MD. CODE ANN., STATE GOV'T §

20-1005(a)).   Importantly, "Maryland law does not give rise to a private right of action for

discrimination in places of public accommodation."  *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595

F. Supp. 3d 392, 407 (D. Md. 2022) (citation omitted); *see Glessner v. Chardan, LLC*, No. CV

SAG-22-03333, 2023 WL 4351331, at *3 (D. Md. July 5, 2023) (explaining that "there is no

private cause of action under the Maryland law" for the plaintiff's section 20-304 claim); *Gandy

v. Howard Cnty. Bd. of Educ.*, No. CV GLR-20-3436, 2021 WL 3911892, at *10 (D. Md. Sept. 1,

2021) ("Maryland's anti-discrimination statute does not give rise to a private right of action.

Indeed, this Court has previously held that while a person subject to discrimination in public accommodations may file a complaint with the Maryland Commission on Civil Rights, the Maryland anti-discrimination statute does not authorize a private individual to file a civil action in court.").  Because no private cause of action exists under State Government section 20-304, Plaintiff's Count V fails to state a claim as a matter of law and will, therefore, be dismissed.

### 2.  *Count II: Race Discrimination in Violation of Title VI*

Defendant finally argues that Plaintiff fails to state a claim for intentional disparate treatment in violation of Title VI, and there is no private right of action for disparate impact claims under Title VI.  (ECF No. 21-1 at p. 12–14.)  In response, Plaintiff avers that there is a private right of action for violations of Title VI.  (ECF No. 23-1 at p. 2.)

Section 601 of Title VI provides: "No person in the United States shall, on the ground of race, color or national origin, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  While "there is an implied private right of action to enforce § 601's core prohibition of discrimination in federally-financed programs," it "prohibits only intentional discrimination, not 'disparate impact' practices."  *Peters v. Jenney*, 327 F.3d 307, 315 (4th Cir. 2003) (citations omitted).  *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 497 (4th Cir. 2005) ("Although Title VI does not expressly authorize a private right of action to enforce this nondiscrimination rule, [i]t is well settled that there is an implied private right of action to enforce [the statute's] core prohibition on discrimination in federally-financed programs." (citation omitted)); *Fordyce v. Prince George's Cnty. Maryland*, 43 F. Supp. 3d 537, 545 (D. Md. 2014) ("Courts have interpreted Section 601 of Title VI as providing a private right of action to enforce claims of intentional discrimination and retaliation.").  Accordingly, to the

extent Plaintiff intends to assert a disparate impact claim under Section 601 of Title VI, he fails to state a claim as a matter of law, because such a claim does not exist.

Conversely, to allege a claim of intentional discrimination under Title VI, "a plaintiff must plead sufficient facts supporting that (1) the defendant is a recipient of federal financial assistance; and (2) the defendant intentionally discriminated against plaintiff on the basis of race, color, or national origin." *Carroll v. Walden Univ., LLC*, 650 F. Supp. 3d 342, 355 (D. Md. 2022) (citation omitted). "In order to survive a motion to dismiss under Title VI, a plaintiff must allege some facts to support that the defendant's 'alleged misconduct was motivated by race.'" *Id.* at 356 (citing *Evans v. 7520 Surratts Rd. Operations, LLC.* No. 21-CV-1637, 2021 WL 5326463, at *4 at *9 (D. Md. Nov. 16, 2021)).

To the extent Plaintiff intends to state an intentional discrimination claim, he has failed to do so. Plaintiff alleges neither that Defendant received federal financial assistance at the relevant time nor that he intentionally discriminated against Plaintiff on the basis of a protected status. As Defendant correctly notes, Plaintiff fails even to allege that he (Plaintiff) is a member of a class protected by Title VI. (ECF No. 21-1 at p. 13.) Further, not only does Plaintiff fail to allege that he was specifically targeted on the Light Rail, or otherwise subject to a different policy or different treatment than any other Light Rail passenger (whether or not such passengers were protected class members), to the contrary, he alleges that the complained-of treatment he received on the Light Rail was the same treatment imposed on all passengers (although he omits to describe the class status of other passengers). (ECF No. 19 ¶ 6 ("The officer announced the fare sweep, informing all passengers that he was checking tickets and advising them to have their tickets out.")). Because Plaintiff has failed to state a claim of race discrimination in violation of Title VI, Count II will be dismissed.

**IV.    MOTION TO STAY**

Because the court will grant Defendant's Motion to Dismiss, Plaintiff's Motion to Stay will

be denied as moot.

**V.    CONCLUSION**

For the reasons set forth herein, by separate order, Defendant's Motion to Dismiss (ECF

No. 21) will be granted, and Plaintiff's Motion to Stay (ECF No. 25)  will be denied as moot.


Date: June 28, 2024                                     /s/_____
                                                        Julie R. Rubin
                                                        United States District Judge

15